MARK L. GILBERT and BENJAMIN W. MORSE, Doing Business under the Trade Name and Style of CONTINENTAL TRADING COMPANY, Respondents, v. AMERICAN OIL EXPORT COMPANY, INC., Appellant, Impleaded with HOUSTON H. EAGLE, Defendant.

First Department, May 5, 1919.

**Principal and agent — action against agent for breach of implied warranty of authority to make contract — evidence — question of fact.**

In an action for an alleged breach of the defendant's implied warranty of its authority to make a contract the complaint alleged that the defendant, representing itself to be the authorized agent of a Paris firm, employed the plaintiffs to sell certain space on board steamships for shipment of oil and agreed to pay plaintiffs as compensation for their services the difference between eight dollars per barrel and the actual price for which the plaintiffs should sell the said space; that the plaintiffs sold the space for a certain number of barrels to an oil company at eight dollars and forty-five cents per barrel but the Paris firm refused to enter into a contract with the oil company upon said terms; that the defendant was not in fact the agent of the Paris firm and had no authority to employ plaintiffs for such purpose. Said allegations were established by the plaintiffs' evidence. The defendant claimed that at the time of the transaction it exhibited to the plaintiffs a cablegram from the Paris firm to it which was read by the plaintiffs and which provided as follows: " Rate now eleven dollars you should get eight or more. Can dispose ten to twenty thousand barrels.  *  *  *."

*Held*, that there was presented a controlling issue of fact for the jury with respect to whether or not the cablegram was exhibited to the plaintiffs by the defendant as constituting its authority, and if it was exhibited the plaintiffs were not entitled to recover; that, therefore, a judgment in favor of the plaintiff, entered upon a verdict directed by the court, must be reversed and a new trial ordered.

SMITH, J., dissented in part, with opinion.

APPEAL by the defendant, American Oil Export Company, Inc., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 21st day of November, 1918, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 20th day of November, 1918, denying appellant's motion for a new trial made upon the minutes.

*Valentine Taylor* of counsel [*Harrington, Bigham & Englar,* attorneys], for the appellant.

*Schuyler M. Meyer* of counsel [*Louis Dean Speir* with him on the brief], for the respondents.

SHEARN, J.:

The complaint alleges that the appellant, representing itself to be the agent of the firm of Stephen & Peters, of Paris, with authority so to do, employed the plaintiffs to sell certain space on board steamships of the Kerr Steamship Line for shipment of lubricating oil between New York and France, and agreed to pay to the plaintiffs as compensation for their services the difference between eight dollars per barrel and the actual price for which the plaintiffs should sell the said space; that the plaintiffs sold the space for 20,000 barrels to the Standard Oil Company at eight dollars and forty-five cents per barrel, but Stephen & Peters refused to enter into a contract with the Standard Oil Company for shipment of the oil upon said terms; that the said defendant was not in fact the agent of Stephen & Peters and had no authority to employ the plaintiffs for such purpose. Accordingly, plaintiffs demand judgment for the sum of forty-five cents per barrel on 20,000 barrels, basing their claim upon the defendant's representation of authority.

Upon the testimony adduced by the plaintiffs, these allegations were clearly established. The appellant introduced evidence, contradicted by the plaintiffs, that at the time of the transaction between the plaintiffs and the defendants, whether it was a sale of space to the plaintiffs, as contended by the appellant, or an employment of the plaintiffs as brokers to sell the space, appellant exhibited to the plaintiffs and the plaintiffs read a cablegram from Stephen & Peters to the appellant which showed on its face the nature and extent of appellant's authority and which was stated by the appellant to constitute its authority. The case turns upon the construction to be placed upon this cablegram, for if it did not authorize the appellant to employ the plaintiffs as brokers, clearly a question of fact was presented for the jury, as the learned trial justice recognized when he directed a verdict in favor of the plaintiffs.

The defendant was not a shipbroker and had never before undertaken to sell shipping space. It was in the oil export business, in connection with which it had extensive business dealings with Stephen & Peters, and it was in connection with its regular business that it learned that Stephen & Peters had an excess of shipping space under contract which they might desire to dispose of. Accordingly, when the appellant learned that the plaintiffs were looking for space in which to ship oil, defendant cabled to Stephen & Peters: " Cable immediately how much space we may sell at seven dollars." The following cablegram was received from Stephen & Peters in reply: " Rate now eleven dollars you should get eight or more. Can dispose ten to twenty thousand barrels. You must ship as Stephen Peters. Wire further." This is the cablegram which, according to the appellant, was exhibited to the plaintiffs as constituting the authority of the defendant. It is evident that this cablegram did not expressly authorize the appellant to employ brokers and, particularly, that it did not expressly authorize the appellant to employ brokers to sell the shipping space at any price in the brokers' discretion provided only that the price should net Stephen & Peters eight dollars a barrel. Any authority to employ brokers, derived from this cablegram, must be implied from the scope of the agency apparently conferred. The cablegram is a plain authorization to *sell* shipping space for Stephen & Peters provided a net price of eight dollars a barrel, as a minimum, was obtained, and Mr. Peters testified that it was his intention to confer such authority. But it was plainly the duty of the agents to obtain for their principals more than eight dollars a barrel if possible. This obligation was not only imposed in terms but it inhered in the very relation of agency, which implies good faith and diligence. It would be entirely inconsistent with such obligation for the agents to hire a broker to dispose of the shipping space upon terms of employment that imposed no obligation whatever upon the broker to obtain the best possible terms, but, on the contrary, authorized the broker to close at the minimum price prescribed for the agents and to pocket as " compensation for services " the entire profit of the transaction, no matter what price the broker succeeded in negotiating. No such authority was

implied in the agency created by this cablegram, and authority for any such extraordinary contract proposed by an agent would ordinarily have to be plainly expressed. When the written evidence of authority, assuming that it was exhibited to the plaintiffs, disclosed that the principals expected their agent to obtain for them the best price possible, the plaintiffs were bound to know that the agents had no authority to employ brokers upon any such terms as those pleaded. Therefore, in my opinion, an issue of fact, the importance of which was controlling, was presented for the jury, with respect to whether or not the cablegram was exhibited to the plaintiffs by the appellant at the time of the transaction as constituting its authority. If it was exhibited, for the reasons stated the plaintiffs were not entitled to recover. If it was not exhibited to and read by the plaintiffs, they were entitled to recover, for, on their testimony, otherwise uncontradicted as to essentials, the appellant represented that it had authority to make the contract of employment sued upon, whereas it had no such authority, express or implied.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING and PAGE, JJ., concurred.

SMITH, J.:

In the latter part of 1916, in December, Stephen & Peters, a firm doing business in France, had a contract with the Kerr Steamship Line for the shipment of 50,000 barrels of oil. They made up their minds they were not going to use all of it and informed the defendant, the American Oil Export Company, of that fact. The plaintiffs were looking for space in which to ship some oil for the Standard Oil Company, and Mr. Reed of the plaintiffs met Mr. Eagle of the defendant and asked him if he knew of any space and Mr. Eagle told him that he thought he could get some. Eagle then cabled over to Peters at Paris to ask how much space they might sell at seven dollars. To this Peters replied: " Rate now eleven dollars you should get eight or more. Can dispose ten to twenty thousand barrels. You must ship as Stephen Peters. Wire further." This last cablegram Eagle swears

he took to the plaintiffs' office and showed it to the plaintiffs and made a contract with them whereby the plaintiffs undertook to take space for 10,000 barrels at eight dollars. The plaintiffs were brokers and were acting confessedly for the Standard Oil Company. Thereafter the steamship company refused to furnish the space and Stephen & Peters failed to live up to their contract to give this space to the Standard Oil Company.

This action is brought for a breach of the defendant's implied warranty of its authority to make the contract. Their claimed breach of warranty of authority is based upon two claims, *first*, that under the cablegram giving to it authority it was only authorized to obtain proposals which it was required to submit to Stephen & Peters, its principal, for approval. *Secondly*, that as brokers, with discretionary power, it could not delegate this discretionary power to the plaintiffs as subbrokers. As to the first claim, if this cablegram be deemed to give authority subject to the approval of the principal, Stephen & Peters, there is evidence that at the time this contract was made this cablegram itself was shown to the plaintiffs, so that if the cablegram be construed to contain any such limitation of authority, the plaintiffs had full knowledge of that limitation and cannot claim a warranty of authority beyond the terms of the cablegram. While the evidence to the effect that this cablegram was shown to the plaintiffs is disputed, nevertheless, the court was not authorized to take this question from the jury and was not authorized to direct a verdict upon the assumption that the defendant warranted its authority to make the sale absolutely without a submission of the contract to their principal for approval. To the second claim the defendant has two answers, *first*, that any limitation of the power of an agent with discretion to delegate that discretion to a subbroker was a limitation imposed by law of which the plaintiffs had equal notice with the defendant and it is at least doubtful if plaintiffs were authorized to rely upon an implied warranty of a specific power to delegate discretionary authority without a specific representation that such authority existed. The second answer is that there was no attempt in this case to delegate .

discretionary power. The sale by the defendant was made at the flat price of eight dollars. To accomplish that sale it was authorized to deal either directly with the Standard Oil Company for whom the purchase was confessedly made, or through a broker with whom it was authorized to make a contract, either for a percentage, or for what it could obtain over eight dollars, as long as by the contract Stephen & Peters were to receive the flat price of eight dollars for the space sold. If the defendant was guilty of negligence in selling at that price, that is a question between the defendant and its principals, and with which the plaintiffs have no concern. There is no limitation upon the authority of a broker to employ another broker, where there is given to the subbroker no discretion as to the price that should be paid to the vendors.

Still another answer may be made. After the making of this contract the defendant notified its principals that it had sold this space to the Standard Oil Company for eight dollars and this sale was ratified and approved by the principals as shown by a later cable from Stephen & Peters, which refers to the sale of further space, and asks " if possible " preference be given in the matter of space over the contract for 20,000 barrel space given to the Standard Oil Company. Further, I do not read these cablegrams as giving any limited authority to the defendant. Eagle, representing the defendant, was asked by Reed if he knew where space could be obtained for shipment, to which Eagle replied that he thought he knew of some and would cable. He then cabled to Stephen & Peters as follows: " Cable immediately how much space we may sell at seven dollars." Before this time Peters had told Eagle that they might have some space to sell. It was in answer to this cablegram that Stephen & Peters cabled: " Rate now eleven dollars you should get eight or more. Can dispose ten to twenty thousand barrels. You must ship as Stephen Peters. Wire further." I cannot read this cablegram as reserving any right of approval of a contract made for Stephen & Peters, but I construe it as full authority to sell space at eight dollars if a better price could not be obtained. To construe the words, " Wire further," as reserving the right of approval is, in my judgment, to give effect to those words not intended by the writer of the cablegram, and not under-

stood by the parties, as shown by subsequent cables between the defendant and its principals, in which no question is made as to the full authority of the defendant to make this contract. In response to questions by plaintiffs' counsel Peters swore that it was his intention in sending the cablegram to authorize Eagle to sell the space if he could get the price. It thus appears that by practical construction of both the sender and receiver of this cablegram no right of approval was reserved in Stephen & Peters. This judgment cannot be sustained, therefore, *first,* upon the ground that the defendant had full authority to make the contract, and *secondly,* if that authority be doubtful, there was a question of fact for the jury as to whether the plaintiffs did not have full knowledge of the extent of the defendant's authority to act.

It seems that these plaintiffs first sued Stephen & Peters, in which suit they were nonsuited on the ground that no authority to make the contract was shown. Whatever may have been the ground of that decision this defendant was not a party to that action, was not bound by that adjudication and against defendant the fact has been in no way adjudicated that it was without authority. It does not appear what evidence was before the court upon that trial, and even if plaintiffs were properly or improperly denied relief as against Stephen & Peters, that judgment cannot establish in any way as against this defendant any fact upon which the defendant could be held liable in this action. The defendant was an agent acting for a known principal, and under the doctrine of *respondeat superior* it cannot be held liable for acts done within that authority.

In my opinion the judgment and order must be reversed and the complaint dismissed.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.